HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| R.H., et al., | CASE NO. C13-97RAJ |
| Plaintiffs, | ORDER |
| v. | |
| PREMERA BLUE CROSS, et al. | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the court on Plaintiff R.H.'s unopposed motions for certification of neurodevelopmental therapy ("NDT") and applied behavior analysis therapy ("ABA") settlement classes and for preliminary approval of settlement agreement. Dkt. ## 60, 62. After extensive negotiations, the parties have reached an agreement that appears to fundamentally change the insurance landscape for all of defendants' Washington insureds with developmental disabilities and autism, and provides the class with broad and immediate relief. The court applauds the parties' efforts.

1  For the reasons stated below, the court GRANTS the motion for certification and
2  DENIES the motion for preliminary approval.[1]

## II. BACKGROUND

4  In January 2013, plaintiff R.H., by and through his parents and guardians, P.H. and
5  N.B.-H, filed this case alleging that Premera Blue Cross and LifeWise Health Plan of
6  Washington ("Premera") failed to comply with Washington's Mental Health Parity Act
7  ("Parity Act").  Dkt. # 1.  The Parity Act generally requires Washington health plans to
8  cover medically necessary outpatient and inpatient services to treat mental disorders
9  covered by the diagnostic categories listed in the most current version of the Diagnostic
10 and Statistical Manual of Mental Disorders ("DSM" or "DSM-IV") under the same terms
11 and conditions as medical and surgical services.  *See* RCW 48.44.341; *J.T. v. Regence*
12 *BlueShield*, 291 F.R.D. 601, 606 (W.D. Wash. 2013).

13 The Employee Retirement Income Security Act ("ERISA") governs the health
14 care plans at issue here, and thus plaintiff brings his claims under its provisions.  *See* 29
15 U.S.C. § 1002.  Plaintiff's complaint sets forth three claims for relief: (1) breach of
16 fiduciary duties pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a); (2) recovery of
17 benefits, clarification of rights under terms of the plan, and clarification of rights to future
18 benefits under the plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);
19 and (3) to enjoin acts and practices in violation of the terms of the plans, to obtain other
20 equitable relief, and to enforce the terms of the plans pursuant to ERISA § 502(a)(3), 29
21 U.S.C. § 1132(a)(3).  Dkt. # 1 ¶¶ 29–41.

22 Plaintiff contends that Premera has adopted a uniform policy excluding coverage
23 for NDT therapy to treat DSM conditions for individuals over the age of six and
24 imposing visit limits on such therapies when covered under its "rehabilitation" benefit.
25 *Id.* ¶ 12.  Plaintiff alleges that he was denied coverage for speech and occupational

27 [1] No party has requested oral argument, and the court finds oral argument unnecessary.

therapy necessary to treat his DSM condition of pervasive developmental disorder-not otherwise specified (DSM-IV 299.8) and developmental delays (DSM-IV 315.9) after reaching visit limits under his rehabilitation benefit. *Id.* Plaintiff alleges that he understood that his ABA therapy to treat his autism was not covered. *Id.* Plaintiff alleges that to the extent that Premera provides any coverage of NDT or ABA therapies, it generally imposes treatment limitations that were not at parity with coverage for medical and surgical services. *Id.* With respect to the ABA therapy, plaintiff contends that Premera's internal policies and procedures created a *de facto* exclusion of ABA therapy to treat plaintiff's autism syndrome disorder ("ASD"). Dkt. # 60 (Plf's Mot.) at 4.

With respect to the NDT therapy, the proposed settlement agreement eliminates Premera's alleged NDT age exclusion and treatment limits when those therapies are provided to treat DSM-IV mental health conditions. The proposed settlement agreement also provides a $3.5 million settlement fund to address NDT class members' claims for reimbursement for uncovered NDT services to treat mental health conditions during the class period. Plaintiff seeks certification for the NDT class under Rule 23(b)(3).

With respect to the ABA therapy, the parties agreed to resolve, on a class-wide basis, the criteria for coverage on a prospective basis. Dkt. # 60 at 5. The past damage claims held by class members were not settled. *Id.* The proposed settlement agreement does not waive the claims of class members who were unable to receive coverage for ABA therapy in the past, and allows individual class members to pursue individual damage claims on a case-by-case basis. *Id.* Plaintiff seeks certification of the ABA class under Rule 23(b)(2).

### III. ANALYSIS

**A. Motion for Certification of NDT and ABA Classes**

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement. The settlement would require the court to certify a class and dispose of the claims of its members. The court has an independent obligation to protect

1   class members.  *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992).  Even for a class

2   certified solely for purposes of settlement, the court must ensure that the class and its

3   proposed representatives meet the requirements of Federal Rule of Civil Procedure 23

4   ("Rule 23").  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In addition, the

5   court must ensure that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P.

6   23(e)(2).

7          Plaintiff proposes that the court certify NDT and ABA classes defined as follows:

8   NDT Class.[2]  All individuals who:

9   (1) have been, are, or will be beneficiaries under an ERISA-governed
       *Health Plan* that has been or will be delivered, issued for delivery, or
10      renewed on or after January 1, 2006 in Washington State by *Premera*;
       and

11   (2) have received, require, or are expected to require medically necessary
       neurodevelopmental therapy for the treatment of a *Mental Health*
12      *Condition*.

13   Where "*Premera*" means:  (a) Premera Blue Cross and LifeWise Health
     Plans of Washington, (b) any parent, affiliate or subsidiary of defendants;
14   (c) predecessors or successors in interest of any of the foregoing; and (d) all
     subsidiaries or parents entities of any of the foregoing.

15   Where "*Health Plan*" means a "health plan" or "health benefit plan" as
16   defined in RCW 48.43.005(26) and delivered or issued for delivery in the
     State of Washington and specifically excludes employer sponsored self-
17   funded plans.

18   Where "*Mental Health Condition*" means a mental disorder in the most
     recent edition of the Diagnostic and Statistical Manual of Mental Disorders
19   published by the American Psychiatric Association.

20   ABA Class.  All individuals who:

21   (1) have been, are, or will be beneficiaries under an insured ERISA-
       governed *Health Plan*, that was or will be delivered, issued for
22      delivery, or renewed on or after January 1, 2006 in Washington State
       by *Premera*; and

23   (2) require medically necessary behavioral interventions that use Applied
24      Behavior Analysis for treatment of *Autism*.

25

26          [2] The court believes that the term "Mental Health Condition" should also be defined.  The
     court has included a definition of "Mental Health Condition" based on similar cases before this
27   court and the parties' apparent use of the term.

ORDER- 4

Where "*Premera*" means:  (a) Premera Blue Cross and LifeWise Health Plans of Washington, (b) any parent, affiliate or subsidiary of defendants; (c) predecessors or successors in interest of any of the foregoing; and (d) all subsidiaries or parents entities of any of the foregoing.

Where "*Health Plan*" means a "health plan" or "health benefit plan" as defined in RCW 48.43.005(26) and delivered or issued for delivery in the State of Washington and specifically excludes employer sponsored self-funded plans.

Where "*Autism*" means a diagnosis of an Autism Spectrum Disorder under DSM-IV-TR 299.0, 299.10, 299.80, or any subsequent revisions thereto.

Dkt. # 60 at 2-3.

The court first considers whether the class plaintiff hopes to certify satisfies the four prerequisites of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  The court will then turn to whether the class satisfies one of the three sets of requirements of Rule 23(b).  After that, the court will address whether the settlement the parties have reached is, at least on a preliminary basis, fair, reasonable, and adequate.

   1.  <u>The Four Pre-requisites of Rule 23(a):  Numerosity, Commonality, Adequacy, and Typicality</u>

The two classes plaintiff hopes to certify satisfy the numerosity and commonality requirements of Rule 23(a).  There are thousands of Premera ERISA insureds who needed NDT to treat a DSM condition during the class period.  Dkt. # 17 (Fox Decl.) ¶ 9.  There are also hundreds of current Premera ERISA insureds diagnosed with ASD who will benefit from the ABA therapy.  Dkt. # 61 (Hamburger Decl.) ¶ 2.  There is no question that joinder of that many individual plaintiffs would be impracticable.  Fed. R. Civ. P. 23(a)(1).  The court agrees that there are at least two common questions: (1) whether Premera's NDT age exclusion violates the Parity Act, and (2) whether Premera's exclusion of ABA therapy to treat ASD through its internal policies, procedures and network violates the Parity Act.   Fed. R. Civ. P. 23(a)(2); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (commonality only requires a single significant question of law or fact).

1    While the numerosity and commonality requirements focus on the class, the

2    typicality and adequacy requirements focus on the class representative.  The

3    representative must have "claims or defenses . . . [that] are typical of the claims or

4    defenses of the class," and must "fairly and adequately protect the interests of the class."

5    Fed. R. Civ. P. 23(a)(3)-(4).

6    Plaintiff's claims are also typical of class members' claims where he, like every

7    other class member, allegedly was denied coverage for medically necessary NDT or

8    ABA therapy to treat his mental health conditions, including ASD.  *See Hanlon v.*

9    *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (representative's claims are typical

10   "if they are reasonably coextensive with those of absent class members; they need not be

11   substantially identical.").

12   Questions of a class representative's adequacy dovetail with questions of his

13   counsel's adequacy.  Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately

14   represent the interests of the class.").  The court has no difficulty concluding that counsel

15   has provided and will likely continue to provide adequate representation for the proposed

16   class.  Additionally, the claims and interests of plaintiff are not in conflict with any

17   interests of the proposed classes, and R.H.'s father is familiar with the duties and

18   responsibilities of being a class representative and will continue to diligently look out for

19   the interests of all class members.  Dkt. # 15 (P.H. Decl.) ¶ 12.

20   2.   The Requisites of Rule 23(b)(2) for the ABA Class

21   Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act

22   on grounds that apply generally to the class, so that final injunctive relief or

23   corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R.

24   Civ. Proc. 23(b)(2).  Here, plaintiff contends that Premera has violated the Parity Act

25   because its internal practices and procedures have imposed a *de facto* exclusion on

26   coverage of ABA therapy to treat autism.  The court finds that all ABA class members

27

will benefit from an order establishing express coverage policy for prospective ABA therapy.

Accordingly, the court finds that the ABA class should be certified under Rule 23(b)(2).

### 3. The Requirements of Rule 23(b)(3) for the NDT Class

Rule 23(b)(3) demands that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When considering a settlement class, the court need not worry about whether the action could be manageably presented at trial. *Amchem Prods.*, *Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997). The predominance requirement focuses on the relationship between the common and individual issues, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013).

Plaintiff has demonstrated that the predominance requirement is satisfied here where each class member seeks a determination regarding whether Premera's exclusion and limitation of NDT coverage violated the Parity Act, breached their insurance contracts and the fiduciary duty owed by Premera, and, if so, whether those violations entitle them to damages.

The superiority of class action is also clear where thousands of class members will be eligible for a streamlined, non-judicial means of obtaining back benefits that were previously excluded or limited. Class members will be able to obtain these benefits without hiring additional attorneys, filing new lawsuits or even exhausting their administrative appeals, and those who do not want to participate may simply "opt out" of the process and pursue their claims independently.

Accordingly, the court finds that the proposed NDT class should be certified under Rule 23(b)(3).

ORDER- 7

**B.  Motion for Preliminary Approval of the Settlement Agreement**

The court's findings on the issue of whether the settlement is fair, reasonable, and adequate are necessarily preliminary.

Under the terms of the settlement agreement, Premera will provide prospective coverage of medically necessary NDT to treat individuals with a mental health condition. Dkt. # 62-1 (Settlement Agreement) ¶ 6.1.  In doing so, Premera has agreed to eliminate its age exclusion, treatment limitations, and caps.  *Id.* ¶¶ 6.1.2-.4.  Premera has also agreed to provide medically necessary ABA therapy coverage to treat autism, and to eliminate its age exclusion, treatment limitations, and caps with respect to ABA therapy as well.  *Id.* ¶¶ 6.2.1-.2.  The agreement also provides for a $3,500,000 fund for the NDT class from which payment will be made for attorney's fees, costs, claims administration costs, payments to R.H. and J.P. for retrospective ABA coverage, incentive awards, and class members' claims for uncovered NDT.  *Id.* ¶ 8.

NDT class members will be eligible for payment from the settlement fund upon submission of a claim form that verifies the claimant's DSM diagnosis, the dates of the NDT for that diagnosis, the providers of the treatment, and the unreimbursed charges or debt incurred with that treatment.  *Id.* ¶ 8.4.  Class members must provide documentation to support their claim for reimbursement.  *Id.* ¶ 8.4.2.1.  An independent claims processor will review the claims, confirm coverage with Premera, ensure that there are no duplicate claims, and provide an opportunity for class members to cure any problems with a deficient claim form.  *Id.* ¶¶ 8.4.3.1-.2.

Plaintiff has not provided the court with any information that would allow it to conclude that $3.5 million is adequate and sufficient to pay the thousands of NDT class members.[3]  Counsel for plaintiffs indicates that the $3.5 million is lower than the out-of-

---

[3] The court notes that it appears that the $3.5 million settlement fund is the fund for all three actions, although only the *A.G.* and *R.H.* classes may submit claims for payment of NDT treatment.  However, plaintiff has not provided any information with respect to the number of

pocket calculation as to damages.  Dkt. # 63 (Spoonemore Decl.) ¶ 6.  However, plaintiff

has not provided that calculation to the court.  Additionally, while it is true that the

practical reality is that not every class member who has out-of-pocket losses will file a

claim, plaintiff has not provided the court with any way to determine whether the

settlement fund is fair, reasonable and adequate.  The court has no way of knowing how

much each claim costs, the approximate number of claims per claimant, or even the

number of claimants, aside from it being in the thousands.  Additionally, although the

settlement agreement and notice identifies thirty-five percent of the $3.5 million for

attorney's fees (Dkt. # 62-1 at 20 (Settlement Agreement) ¶ 13.1, at 41 (Not.)), the Ninth

Circuit has established a benchmark award for attorney's fees of twenty-five percent of

the common fund.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The court expects that counsel will provide detailed billing records when it files its

motion for attorney's fees and costs.  *See Id.* ("This 'benchmark percentage should be

adjusted, or replaced by a lodestar calculation, when special circumstances indicate that

the percentage recovery would be either too small or too large in light of the hours

devoted to the case or other relevant factors.'").

　　　　While the court anticipates a separate motion for attorney's fees, the court cannot

assess whether the settlement is fair, reasonable, and adequate without legal authority and

at least some evidentiary support demonstrating special circumstances that would justify

an upward departure of thirty-five percent from the benchmark percentage.[4]  *See In re*

*Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 941 (9th Cir. 2011) (court has

independent obligation to ensure that the fee award, like the settlement, is reasonable,

even if the parties have already agreed to an amount).  The court also notes that class

---

potential claimants in the *A.G.* lawsuit, or any additional costs arising from the other lawsuits
that would be subtracted out of the settlement fund.

　　　[4] The court notes that thirty-five percent of the settlement fund is $1,225,000, and twenty-
five percent is $875,000.

members must have an adequate opportunity to object to a fee motion, and plaintiff has not indicated that class members would have any such opportunity.[5]  Fed. R. Civ. Proc. 23(h); *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

Additionally, plaintiff has failed to provide any evidence or legal authority that would adequately support as reasonable a $25,000 incentive award to each individual plaintiff and parents and guardians ($100,000 total for all class representatives).  Nor is there any estimate of the amount of litigation costs or claims administration.

In sum, the court has no way to determine whether the amount remaining after subtracting costs and fees would be adequate, fair and reasonable for the thousands of potential claimants in the *R.H.* NDT Class and an unknown number of potential claimants in the *A.G.* Class.  In the renewed motion, plaintiff should include evidentiary support for an estimation of all costs, claims, and fees that will be subtracted from the settlement fund, including those associated with the other two cases.

With respect to the *cy pres* award in the event that funds remain, plaintiff has not explained why the *cy pres* recipients have not already been identified.  Dkt. # 62-1 at 18 (Settlement Agreement) ¶ 8.4.6.3.  Such entities should either be identified, or plaintiff should provide legal authority to the court demonstrating that *cy pres* recipients may be decided by agreement at a later time, which necessarily means that class members would not have notice of the entity.  Indeed, the court has no way of determining at this point whether some later-identified entity has a direct and substantial nexus to the interests of absent class members or whether the organization would use the funds to benefit class members.  *See Lane v. Facebook, Inc.* 696 F.3d 811, 821-22 (9th Cir. 2012).

Finally, the form of notice that class counsel provides, which it proposes to be mailed to all class members, is not reasonable.  Fed. R. Civ. P. 23(c)(2)(B) (requiring

---

[5] The notice to class members does not currently provide a mechanism or instruction on how a class member could review the fee motion.

"best notice that is practicable under the circumstances, including all members who can be identified through reasonable effort"). The parties have failed to provide key information and parts of the notice are misleading or confusing. For instance, no amount has been provided for approximate litigation costs (Dkt. # 62-1 at 41), and there is no indication that class members will have an opportunity to review the attorney's fees motion. The parties need to include the website in the form of the notice. *Id.* at 39-40, 43. Additionally, the notice must provide a date certain or timeframe within which the opt-out and comments on the agreement must be submitted (*id.* at 42-43), and the hearing date must be sufficiently in advance to provide class members meaningful opportunity to review all documents. The notice is also confusing because it includes all three actions, but does not specify how a potential claimant is supposed to know where to submit their objections and to which court. Section 8 of the notice is misleading because it does not indicate that NDT damage claims are released. *Id.* at 43. Finally, the parties should include a sentence in section 7 that all communications with the court must be in writing and that class members should not call the court. *Id.* at 43.

With respect to the opt-out form, it is unclear to the court why the opt-out is addressed to class counsel, as opposed to the claims administrator. Plaintiff may have a good reason for doing so, and plaintiff should address this in the subsequent filing.

In sum, the court does not have sufficient information to be able to determine whether the settlement is fair, reasonable, and adequate.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS plaintiff's unopposed motion to certify the NDT and ABA classes (Dkt. # 60), and DENIES the unopposed motion for preliminary approval of settlement agreement (Dkt. # 62).[6] Plaintiff may file a single,

---

[6] To the extent that the parties object to the court's addition of the meaning of "Mental Health Condition" to the class definition, they should so state in the renewed motion or opposition thereto.

1  renewed motion that addresses the concerns raised by the court no later than August 1,

2  2014.  To the extent that the Settlement Agreement or Notice is revised, plaintiff shall

3  submit a redline version in addition to the revised version.  Plaintiff should propose a new

4  timeline, including (1) a deadline for the settlement website to be available to the public,

5  (2) the date by which the parties must complete the initial mailing of the notice, (3) a

6  deadline for filing the attorney's fees motion and making it available on the website, (4) a

7  deadline for filing the motion for final approval, (5) a deadline for class members to

8  submit claims, exclude themselves, or file objections, (6) a deadline for the parties to

9  submit responses to any objections, and (7) the final approval hearing that provides

10 sufficient opportunity for class members to receive notice and determine whether they

11 want to submit a claim, oppose or opt-out before the final hearing.

12

13        Dated this 7th day of July, 2014.

14

15

16        The Honorable Richard A. Jones
          United States District Judge

17

18

19

20

21

22

23

24

25

26

27