Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| R.H., by and through his parents and guardians, P.H. and N.B.-H., individually, on behalf of WASHINGTON ALLIANCE FOR HEALTHCARE INSURANCE TRUST HEALTH BENEFIT PLAN, and on behalf of similarly situated individuals and plans,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS, LIFEWISE HEALTH PLAN OF WASHINGTON<br><br>Defendants. | NO. 2:13-cv-00097-RAJ<br><br>PLAINTIFF'S MOTION FOR RECONSIDERATION RE: PRELIMINARY APPROVAL<br><br>(ORAL ARGUMENT REQUESTED)<br><br>Noted for Consideration:<br>    July 16, 2014 |

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL
[Case No. 2:13-cv-00097-RAJ]

Sirianni Youtz
Spoonemore Hamburger
999 Third Avenue, Suite 3650
Seattle, Washington 98104
Tel. (206) 223-0303   Fax (206) 223-0246

## I. INTRODUCTION

The Court denied preliminary approval of the settlement because it "does not have sufficient information to be able to determine whether the settlement is fair, reasonable, and adequate." Dkt. No. 65, p. 11, lns. 19-20. While class counsel agrees that the Court must eventually make this determination, they respectfully suggest that the Court may have attempted to make this determination prematurely. Class counsel therefore moves for reconsideration.

The standard for preliminary approval is different than FRCP 23(e)'s "fair, reasonable and just" standard. Because it is only preliminary, it is exceedingly lenient:

> At this preliminary stage, the Court need only determine whether the settlement is 'within the range of possible approval.' *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is 'fair, reasonable, and adequate." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). Rather that determination is made only at the final approval stage….

*City of Greenville v. Syngenta Crop, Inc.*, 2012 U.S. Dist. LEXIS 74305, *11 (S.D. Ill. 2012).

The only real question at this point is whether sending notice, and engaging in the final approval process, would be a waste of time because the proposed agreement is so deficient as to have utterly no hope of final approval. *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980). In making this determination courts place "great weight" upon the opinion of class counsel. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Vanwagoner v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 67141, *18 (E.D. Cal. 2014). As such, "the Court need not review the settlement in detail at this time." *Vanwagoner*, 2014 U.S. Dist. LEXIS at *19 (*quoting Durham v. Cont'l Cent. Credit, Inc.*, 2011 U.S. Dist. LEXIS 2066, *5-6 (S.D. Cal. 2011)).

None of this ignores the Court's valid questions. All of the questions posed by the Court with respect to whether the settlement should be approved are appropriate, and must be resolved before final approval is granted. However, those questions need

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 1
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

not – and in some cases, simply cannot – be answered until after preliminary approval is granted. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("Because some of the factors bearing on the propriety of a settlement cannot be assessed prior to the final approval hearing, 'a full fairness analysis is unnecessary at this [preliminary] stage.'").

For example, the Court asks – quite properly – whether the cash fund will be sufficient to provide fair reimbursement to claimants. Class counsel believes that it is, *see* Dkt. No. 63, ¶6, which is all that is required for preliminary approval. However, nobody expects the Court to simply rely upon class counsel's assurances before issuing final approval. That's why the process established by the settlement agreement is designed to provide the Court with actual data before final approval, *e.g.*, before the Court considers whether to finally approve the settlement we will have, though the claims process, actual data upon which the Court can judge whether the settlement meets the FRCP 23 standard.

The data collected from the claims process will be far more accurate than the conflicting modeling data created by the parties in the negotiation process. And, if class counsel's informed judgment about the adequacy of the settlement fund is woefully wrong, then the class will be protected because the Court will be able to make that judgment prior to final approval.[1]

The Court also identified issues with respect to the proposed notice and notice process. Those issues are also addressed below, with a revised notice and notice plan submitted for the Court's review. After consulting with Premera, we are also proposing new dates for the approval process, if preliminary approval is granted.

---

[1] The process will answer all the other questions as well. For example, if class counsel is able to obtain a full recovery for every claimant in the claims process, then that type of success would justify a departure from the benchmark fee of 25%. Again, however, those questions cannot be answered until after the process has begun.

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 2
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

## II.  LAW AND ARGUMENT

**A.  At the Preliminary Approval Stage, the Court Does not Determine Whether the Settlement is "Fair, Reasonable and Adequate."**

The Federal Rules do not require preliminary approval of a class action settlement agreement.  FRCP 23(e); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983).  Rather, practitioners and courts have developed a process to permit the court to identify any blatant deficiencies which would render notice futile.  *Horton v. Merrill Lynch*, 855 F. Supp. 825, 827 (E.D. N.C. 1994).  The first step is exceedingly lenient, with the court merely determining whether "there is 'probable cause' to notify the class of the proposed settlement."  *Id.*

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'  ***This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing***.  Manual of Complex Litigation § 1.46, at 53-55 (West 1977).  If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing.  Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.  ***The goal of the fairness hearing is "to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate.'***

*Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980).  Because preliminary approval does not bind the court, it should be denied only where "a proposed settlement is obviously deficient." *Jones*, 2007 U.S. Dist. LEXIS 52144, 2007 WL 2085357, *2 (D. N.J. 2007).  *See also Ayers v. Musgrove*, 2001 U.S. Dist. LEXIS 9306,

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 3
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

*10 (N.D. Miss. 2001) ("[T]he required legal test . . . is whether there is a possibility that the proposed plan can be approved as is or approved with suggested changes.").[2]

In deciding whether there is "probable cause" to issue notice to the class and proceed to a final hearing, "great weight is accorded the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Vanwagoner*, 2014 U.S. Dist. LEXIS 67141, *19 (*quoting Gribble v. Cool Transports, Inc.*, 2008 U.S. Dist. LEXIS 115560, 2008 WL 5281665, at *9 (C.D. Cal. 2008)).

> This is because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pacific Enters. Sec. Litig.*, 47 F.3d at 378. Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

**B.    The Claims Process Will Provide Data Which Will Fully Address the Court's Questions About Class Member Recoveries.**

The Court was concerned that it has "no way to determine whether the amount remaining after subtracting costs and fees would be adequate, fair and reasonable for the thousands of potential claimants in the *R.H.* NDT Class and an unknown number of potential claimants in the *A.G.* Class."  Dkt. No. 65, p. 10.  The Settlement Agreement is structured to provide an answer to that question in advance of final approval.

---

[2] This approach is uniformly followed within the Ninth Circuit.  *See, e.g., Durham v. Cont'l Cent. Credit, Inc.*, 2011 U.S. Dist. LEXIS 2066, *6 (S.D. Cal. 2011) ("[T]he Court need not review the settlement in detail at this time; instead preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'"); *La Parne v. Monex* Deposit Co., 2010 U.S. Dist. LEXIS 131029, *4 (C.D. Cal. 2010) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on final approval…."); *Misra v. Decision One Mortg. Co.*, 2009 U.S. Dist. LEXIS 119468, *9 (C.D. Cal. 2009) (on preliminary approval motion, court only determines whether the settlement could "potentially" be found to be fair after final hearing); *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, *10 (S.D. Cal. 2009) (the question is whether there "is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.")

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 4
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Under the process proposed to the Court claim forms will be sent out with the notices. Those claim forms will be returned before the final approval hearing, permitting the Court to know the potential recovery that would be awarded to each class member before final approval is considered.[3]

The alternative – requiring class counsel to detail the reasons why they believe the amount to be adequate upon preliminary approval – would necessarily require counsel to disclose confidential material exchanged between the parties in mediation.[4] Given that damage modeling is far from an exact science, it would also require class counsel to disclose their thoughts and work product at a time when they are also deep in discussions with Regence (and others) over similar damage claims. Class counsel therefore respectfully requests a "trust but verify" approach: it requests deference at this preliminary stage in order to permit the claims process to provide the ultimate answer with respect to the anticipated recoveries of all claiming class members. *Alberto*, 252 F.R.D. at 665 (some factors will not be known until final approval, this fact poses no barrier to preliminary approval).

Ultimately, class counsel believes that class members have a right to know about this proposed settlement. Cash fund aside, the prospective relief afforded in the

---

[3] In the final approval motion, class counsel will set forth all of the fees, costs and expenses in order to give the Court a precise view of the claimants' recoveries. (Litigation costs will not have a significant impact on the settlement fund – the total costs for all three actions is less than $75,000, or only 2% of the fund.) All of this information will also be posted on class counsel's webpage in order to permit class members to comment on the anticipated recovery in advance of the final approval hearing.

[4] Without disclosing confidential details, the settlement amount is higher than what Premera and its experts calculated, but lower than what plaintiffs and his experts modeled. It therefore cannot be said that it is "obviously deficient" such that notice would be futile. The Court need not review all of the expert analysis of the two parties (much of which was exchanged in confidence) to determine who has the best model. At this stage, it only needs to conclude that the amount is not so low so as to make notice futile. If preliminary approval is granted, then the Court will soon have exact data. *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 210 (S.D. N.Y. 1995) ("In any event, the Court will be in a position to fully evaluate the [CR 23] factors at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of Class Members.").

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 5
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

settlement agreement is momentous: expansive coverage for NDT and ABA, *without visit limits*, whenever medically necessary. It is not an understatement to say that this relief will, if approved, have a lasting and profound effect on class members. *That relief alone is reason enough to send out notices and solicit comments from class members*. Indeed, even if class members end up taking a substantial deduction on retrospective payments (which class counsel doubts) many class members might find that immediate, broad and uncapped prospective relief is more than worth the trade-off. Giving class members notice of this proposed settlement and permitting them to comment on its terms would not be futile – it would appropriately permit class members to participate in a significant event in this litigation which has profound effects on their lives.

**C.     The Fees Provision of the Settlement Agreement is not Obviously Deficient.**

The Settlement Agreement permits Class Counsel to "apply for attorney's fees under the common fund/common benefit doctrine in an amount up to, but not exceeding, 35% of the Settlement Amount." *See* Settlement Agreement, ¶13.1. This provision is not obviously deficient, and should be preliminarily approved.

*First*, this provision does not require the Court to award 35% of the Settlement Amount as fees.[5] It only permits class counsel to make an application for fees up to, but not exceeding, that amount. Class counsel will not be overcompensated because

---

[5] This is not an agreement, like in *Staton*, where class counsel had to receive a certain fee award or the settlement agreement was void. *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003) ("The parties negotiated the amount of attorneys' fees awarded class counsel as a term of the settlement agreement and thus conditioned the merits settlement upon judicial approval of the agreed-upon fees."). Here, class counsel decides (up to a limit) how much to apply for and then court then decides the exact amount. *Id.* ("Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then *apply to the court* for a fee award from the fund.") (emphasis added). This is the exact process called for here, except that the agreement imposes a limit on counsel's request.

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 6
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

the Court has the final say with respect to compensation.  *See* Settlement Agreement, ¶13.1.

***Second***, the benchmark is 25% of the ***common benefit*** to the class. *Vizcaino v. Microsoft Corp.,* 142 F. Supp. 2d 1299, 1301, n.1 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).  The "common benefit" is not just cash, it includes the value of prospective relief secured through counsel's efforts.  *Id.* (total common fund included cash fund plus estimated value of future monetary relief obtained for class members). *See also Vizcaino v. Microsoft*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("[T]he court found that counsel's performance generated benefits beyond the cash settlement fund.").

> Though in many common fund cases the size of the recovery is easily determined, if prospective or other nonmonetary relief is granted, the recovery may be difficult to evaluate.  Nevertheless, the fee should be based on a percentage of the value of ***all*** the relief obtained for the class of beneficiaries through counsel's effort, whether monetary or nonmonetary.

M.F. Derfner and A. Wolf, COURT AWARDED ATTORNEY FEES, ¶2.06, pp. 2-86-87 (2000) (emphasis in original).[6]  This rule recognizes that it would be perverse to punish class counsel with a lower fee award when (as occurred here) they succeeded in obtaining effective prospective relief for the class in a case (thereby preventing continuing monetary loss to the class members, but decreasing the cash fund necessary to pay back damages).  In this case, class counsel did not only secure a cash fund, but obtained a massive expansion of coverage for NDT and ABA services for class members as well. In fact, the majority of value in this settlement is not the cash, but the promise of coverage into the future without visit limits or other caps.

---

[6] *See also* A. Conte, ATTORNEY FEE AWARDS, §2.05, p. 37 (1993) ("numerous courts have concluded that the ***amount of the benefit conferred*** logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed") (emphasis added); *id.*, §2.22 (all benefits should be presented to court in common fund fee application).

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 7
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Despite the obvious significance of the broad prospective relief under the settlement, the attorney's fees are capped at 35% of *just the cash*, despite the enormous monetary value in NDT and ABA relief.  For example, even if all of the prospective relief for both NDT and ABA were valued at only $1.5 million (which is a ridiculously low valuation of these benefits), then 35% of the cash Settlement Amount would actually be *less* than 25% of the common benefit to the class.

*Third*, class counsel would be justified in seeking more than 25% of the common benefit if the class members are made whole.  The "usual range" is not a cap or ceiling on fees.  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1310 (9th Cir. 1990).  An excellent result for the claimants is an extraordinary circumstance which justifies a higher fee.[7]  Here, whether class counsel did an exceptional job will be known prior to final approval, and prior to any award of fees being made.

The attorney's fee provision is not "obviously deficient" for purposes of preliminary approval.  The Court, and the class members[8], will be able to evaluate class counsel's application for fees well in advance of any final approval hearing.

### D. The Incentive Award Provision of the Settlement Agreement is not Obviously Deficient.

Like the attorney fee provision, the settlement does not require that the class representatives receive any specific incentive payment.  It only permits class counsel to

---

[7] When class counsel is able to recover more than a small fraction of a class's losses, courts find the recovery "unusual" such that an award beyond 30% is warranted.  *In Re: Heritage Bond Lit.*, 2005 WL 1594403, *19 (awarding 33⅓% because of "exceptional result" in obtaining settlement for 23% of class members' losses, citing cases awarding 33⅓% or more for recoveries ranging from 10% to 17% of class members' losses); Conte, ATTORNEY FEE AWARDS, §2:8 (3d ed.).

[8] If there no significant objections to the attorney fee request, then this would be "significant evidence that the proposed fee request is fair." *In re Ravisent Tech., Inc. Sec. Litig.*, 2005 WL 906361, *11 (E.D. Pa., April 18, 2005) (collecting cases); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 338 (E.D. Pa. 2007) (awarding Class Counsel 35% based, in part, on lack of objections).  This cannot be known until notices are sent and comments received from the class members.

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 8
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

make an application to the court up to a certain limit. It is then up to the court to determine the amount to be paid.

This is a common term. Courts routinely approve incentive awards to compensate the named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). These awards are "not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." *In re Southern Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). Such awards are appropriate where the named plaintiff provided active assistance to class counsel. *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007).

Awards to class representatives generally range from $10,000 to $50,000. *See, e.g., In re Remeron End-Payor Antitrust Litig.,* 2005 WL 2230314, *32-*33 (D. N.J. 2005) ($30,000); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D. N.Y. 1997) ("The reported cases … generally range from individual awards of $50,000 … ."). There is nothing obviously deficient about a process under which class counsel applies for incentive awards up to a certain cap, with the Court having the final say as to amount.

E. **The *Cy Pres* Process is not Obviously Deficient.**

The Court expressed concern that the *cy pres* recipients have not already been identified, and requested authority for the process set forth in the settlement. Dkt. No. 65, p. 10.

It is appropriate to defer, until the conclusion of a claims process, the precise identification of any *cy pres* recipient. *Lane v. Facebook, Inc.*, 696 F.3d 811, 817 (9th Cir. Cal. 2012) (approving process under which money went to a new foundation who then selected the recipients of awards); *Howe v. Townsend*, 588 F.3d 24, 34 (1st Cir. 2009) (approving agreement that directed *cy pres* money to be distributed to "mutually

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 9
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

acceptable charitable organizations funding cancer research or patient care that the court would approve in the future.").[9] The Ninth Circuit has approved of a *cy pres* distribution process under which funds were given to an entity for eventual distribution to other unnamed originations:

> The parties' respective counsel arrived at the decision to distribute settlement funds through a new grant-making organization, rather than simply give the funds to an existing organization, at the suggestion of the private mediator overseeing their negotiations. *Neither Facebook's nor the plaintiffs' class counsel was comfortable with selecting in advance any particular non-profit or non-profits to receive the entirety of the settlement fund*, so they acceded to the mediator's suggestion that Facebook set up a new entity whose sole purpose was to designate fund recipients consistent with DTF's mission to promote the interests of online privacy and security.

*Lane*, 696 F.3d at 817 (emphasis added). Despite the fact that the eventual recipients of the funds were left unnamed in the settlement, the Ninth Circuit held that this process was entirely proper:

> [W]e have never held that *cy pres* funds must go to extant charities in order to survive fairness review, and a settlement agreement that provides for the formation of a new grant-making organization is not subject to a more stringent fairness standard. . . . . Here, . . . the settlement agreement and DTF's Articles of Incorporation tell us exactly how funds will be used — to "fund and sponsor programs designed to educate users, regulators[,] and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and the protection of users from online threats." *As we have explained, that mission statement provides the requisite nexus between the cy pres*

---

[9] This is a common practice. *See e.g. Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 114451, *10 (S.D. Cal. 2008) (settlement agreement approved by the court provides that *cy pres* award will be made to a "mutually agreed-upon organization" meeting certain requirements); *Mosser v. TD Bank, N.A.*, 2013 U.S. Dist. LEXIS 187627, *86 (S.D. Fla. 2013) (Court held that it is "perfectly appropriate" to *generally* direct "leftover monies to organizations furthering consumer financial literacy education, and to educate and assist consumers with financial services."); *Lagarde v. Support.com, Inc.*, 2013 U.S. Dist. LEXIS 67875, *7 (N.D. Cal. 2013) (Approving process under which the recipients were identified after final approval: "Following the [final approval] hearing, Plaintiffs submitted their proposed recipients of the *cy pres* account.").

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 10
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

> *remedy and the interests furthered by the plaintiffs' lawsuit consistent with the principles we announced in Nachshin.*
>
> Objectors' contention that the settling parties were prohibited from creating DTF to disburse *cy pres* funds is without merit, and the district court did not abuse its discretion in so concluding

*Lane*, 696 F.3d at 822 (emphasis added).[10]

As the Ninth Circuit noted, not only is it common practice to wait to identify the *cy pres* recipients, it is the better practice. *Six (6) Mexican Workers*, 904 F.2d at 1309 ("After the claims period has expired and the amount of the unclaimed fund in known, the district court will be in a better position to determine [how to distribute funds].").[11] For example, the amount of residual funds has a significant bearing on what entity (or entities) should receive funds. If there are significant funds, then those funds can be spread between a number of groups. A small amount might be best if given to only one entity. As the Ninth Circuit has directed, these types of *cy pres* decisions generally should not be made until after the claims process has concluded.

The *cy pres* process in the settlement here is plainly reasonable. The money "shall be distributed to organizations to assist families with a family member with developmental conditions to access health care and health coverage." Settlement Agreement, ¶ 8.4.6.3. As in *Howe* and *Lane*, this type of "mission statement" codifies a nexus between the lawsuit and the objectives of any recipient. *Howe*, 588 F.3d at 34; *Lane*, 696 F.3d 822. To add extra protection that any awards properly reflect this

---

[10] In so holding, the Ninth Circuit has rejected the notion that class members have the right to object to *cy pres* recipients. *Lane*, 696 F.3d at 822 ("We do not require as part of that doctrine that settling parties select a *cy pres* recipient that the Court or class members would find ideal. On the contrary, such an intrusion into the private parties' negotiations would be improper and disruptive to the settlement process.").

[11] This process was recently used with success in *D.F. v. HCA*, an ABA class action case in which a King County Court distributed $752,756.83 to organizations *after* the claims process was concluded. As here, the precise recipients were not identified in the settlement agreement. Rather, the parties made recommendations to the court who ultimately decided how to distribute the funds.

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 11
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

required nexus, this Court, not the parties, will make the final decision with respect to what entities will receive funds.  *See* Settlement Agreement, ¶ 8.4.6.3 ("The R.H. Court shall have the final authority to distribute the *cy pres* funds allocated to the RH. Action.").

**F.     The Revised Notice Should be Approved.**

Class counsel has revised the proposed class notice to address the Court's concerns.  This revised proposed notice is attached hereto as ***Exhibit A***.  As requested, a redline version showing the changes from the original notice is attached hereto as ***Exhibit B***.  Attached hereto as ***Exhibit C*** are revised opt-out and claim forms, and ***Exhibit D*** shows changes from the original versions.  Finally, class counsel has drafted a notice plan to detail the web-based notice protocols.  *See **Exhibit E***.

**G.     Proposed Scheduling Order.**

Class counsel has consulted with Premera about a new proposed schedule. After such consultations, a new proposed schedule is submitted hereto as ***Exhibit F***.

### III.  CONCLUSION

R.H. respectfully requests that the Court reconsider it denial of preliminary approval, and asks the Court to (a) preliminarily approve the Settlement Agreement; (b) authorize the mailing of notice to *R.H.* NDT Class and *R.H.* ABA Class members; (c) approve the notice plan; and (d) establish a final settlement approval process.  A proposed Order is submitted with this motion.

DATED:  July 16, 2014.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

      /s/Richard E. Spoonemore
Richard E. Spoonemore (WSBA #21833)
   Email: rspoonemore@sylaw.com
Eleanor Hamburger (WSBA # 26478)
   Email: ehamburger@sylaw.com

Attorneys for Plaintiff R.H.

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 12
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Barbara J Duffy**
  duffyb@lanepowell.com, Docketing-SEA@LanePowell.com, wileyj@lanepowell.com

- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, theresa@sylaw.com

- **Ryan P McBride**
  mcbrider@lanepowell.com, savariak@lanepowell.com, docketing-sea@lanepowell.com

- **Gwendolyn C. Payton**
  paytong@lanepowell.com, Docketing-SEA@LanePowell.com, rountreei@lanepowell.com

- **Richard E Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

- (No manual recipients)

DATED: July 16, 2014, at Seattle, Washington.

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Richard E. Spoonemore*
　　　　　　　　　　　　　　　　　　　　　　　　　Richard E. Spoonemore (WSBA #21833)

PLAINTIFF'S MOTION FOR RECONSIDERATION
RE: PRELIMINARY APPROVAL – 13
[Case No. 2:13-cv-00097-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246